# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## CIVIL CASE NO. 3:07cv312

| | |
|---|---|
| JENNIFER L. COLEMAN, ) | |
| FAITH S. TENNYSON, ) | |
| TOMEAKA MCALLISTER, ) | |
| MELLISSA TRINITY MORK, ) | |
| CHIANTIA EQUANA GREEN, ) | |
| SHERRYLEEN GAMBLE, ) | |
| JAMES E. BRADLEY and wife ) | |
| BIANCA P. BRADLEY, ) | |
| LEASA A. WRIGHT, and ) | |
| GARY L. MORGAN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| BEAZER HOMES CORP., ) | |
| BEAZER MORTGAGE ) | |
| CORPORATION, and ) | |
| RODERICK D. WILLIAMS, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on the Motion of Beazer Homes Corp. and Beazer Mortgage Corporation to Dismiss Complaint [Doc. 2], the Motion of Roderick D. Williams to Dismiss Complaint [Doc. 4], and the Motion of Plaintiffs Seeking Remand [Doc. 7].

## I. Factual Background and Procedural History

The Defendant Beazer Homes Corp. ("Beazer Homes") is a residential real estate developer and builder of homes in North Carolina and throughout the United States. [Complaint, Doc. 1-2 at ¶7]. The Defendant Beazer Mortgage Corporation ("Beazer Mortgage") is a mortgage brokerage company that arranges loans for its customers to purchase homes constructed by Beazer Homes. [Id. at ¶8]. The Defendant Roderick D. Williams ("Williams") is a real estate broker employed by Beazer Mortgage. [Id. at ¶13]. The Plaintiffs are all homeowners who purchased homes constructed by Beazer Homes in the Oak Hill subdivision located in Mecklenburg County, North Carolina. [Complaint, Doc. 1-2 at ¶ 12].

The Plaintiffs allege that the Defendants engaged in an unlawful plan to qualify the Plaintiffs and others for home mortgage loans through fraud and that, in so doing, the Defendants "violated, among other laws and duties, the following lending laws, N.C. Gen. Stat. §§ 53.243.11(1) and (8)." [Id. at ¶¶ 10, 11]. Specifically, the Plaintiffs allege that:

> (a) Defendants concealed the fact that certain of the Plaintiffs' loan applications contained false information, or omitted material information;

(b) Defendants concealed the fact that Plaintiffs could not afford the mortgages provided by the Defendant Beazer Mortgage and other lenders;

(c) Defendants concealed the fact that some of the Plaintiffs incurred a second mortgage obligation in the purchase of their Beazer Homes' residence;

(d) Defendants concealed the fact that Plaintiffs' sales prices were inflated beyond true fair market value to accommodate high loan fees and other charges and expenses levied by the Defendants;

(e) Defendants misrepresented that some of the Plaintiffs were receiving "gifts" to assist in closing, when in fact they were incurring second mortgages in the purchase of their Beazer Homes residences;

(f) Defendants misrepresented the assets of some of the Plaintiffs on their loan applications;

(g) Defendants misrepresented the debt obligations of some of the Plaintiffs on their loan applications;

(h) Defendants concealed the fact that some of the Plaintiffs would suffer higher mortgage payments at a later date as a result of a non-disclosed, or improperly disclosed, "buy-down" loan arrangements;

(i) Defendants gave misleading tax advice to the Plaintiffs who qualified for the Mortgage Credit Certificate (MCC) program;

(j) Defendants Beazer Homes and Williams wrongfully advised some of the Plaintiffs as to the appropriate information to include in their loan application; and

> (k) Upon information and belief, the corporate defendants knowingly permitted Williams to engage in mortgage brokerage activities on behalf of Beazer Mortgage and other lenders, without a license to do so. Specifically, Williams obtained loan application information from the Plaintiffs as part of the loan application process.

[Id. at ¶11]. The Plaintiffs allege that as a result of the Defendants' conduct, the properties in the Oak Hill subdivision were sold to a "large group of unqualified buyers," and that the Defendants' conduct has "directly and proximately caused widespread foreclosures in the Oak Hill subdivision, because many homeowners in the Oak Hill subdivision have been unable to pay the mortgages fraudulently secured by the Defendants for them." [Id. at ¶15]. The Plaintiffs claim that the Defendants have proximately caused damages to them "in the form of diminished home values, loss of property, loss of marketability of property, have incurred additional substantial debts to make mortgage payments, and other damages, including credit reporting damages, and over-mortgaged properties." [Id. at ¶17].

The Plaintiffs originally filed their Complaint in the Mecklenburg County General Court of Justice, Superior Court Division, on July 3, 2007, asserting claims for unfair and deceptive trade practices, in violation of the

North Carolina Unfair and Deceptive Trade Practices Act, ("UDTPA"), N.C. Gen. Stat. § 75-1, *et seq.* (Count I); fraud and misrepresentation (Count II); breach of duty of good faith and fair dealing (Count III); breach of fiduciary duty and constructive fraud (Count IV); and civil conspiracy (Count V). [Id. at 7-12]. On August 3, 2007, the Defendants removed the matter to this Court on the grounds that Plaintiffs' claims "necessarily implicate federal law," thereby creating federal question jurisdiction pursuant to 28 U.S.C. § 1331. [Notice of Removal, Doc. 1 at 4].

On August 10, 2007, Defendants Beazer Homes and Beazer Mortgage filed a motion to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing (1) that the Plaintiffs lack standing to bring claims based upon the devaluation of their homes and (2) that the Plaintiffs have failed to state a claim upon which relief may be granted as to Counts I, II, III and V of the Complaint. [Defendants' Motion to Dismiss, Doc. 2]. On September 5, 2007, the Plaintiffs filed a motion to remand this matter to state court, arguing that the Court lacks federal question jurisdiction under 28 U.S.C. § 1331. [Doc. 7]. Both motions have been fully briefed and are now ripe for review.

5

## II. Plaintiffs' Motion to Remand

Because the Plaintiffs assert that the Court lacks subject matter jurisdiction over the Plaintiffs' claims, the Motion to Remand will be addressed as a threshold matter.

Except as otherwise provided by law, a defendant may remove a state civil action to federal district court where the action is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Among those cases of which the district courts have original jurisdiction are civil cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Under the "well-pleaded complaint rule," the Court has jurisdiction under section 1331 "only if a claim, when pleaded correctly, sets forth a federal question; in other words, whether 'a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.'" King v. Marriott Int'l, Inc., 337 F.3d 421, 424 (4th Cir. 2003) (quoting Taylor v. Anderson, 234 U.S. 74, 75-

6

76, 34 S.Ct. 724, 58 L.E.2d 1218 (1914)). A plaintiff, being the "master of the claim," thus may avoid federal jurisdiction by exclusively relying upon state law. Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Under the "artful pleading doctrine," however, the Court may nevertheless conclude that federal question jurisdiction exists "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 9, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983)).

Removal jurisdiction is not favored, and thus the Court must "construe it strictly in light of the federalism concerns inherent in that form of federal jurisdiction." In re Blackwater Security Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006), cert. denied, 127 S.Ct. 1381, 167 L.Ed.2d 174 (2007). The burden is on the party seeking removal to demonstrate that federal jurisdiction is proper. Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994).

Recently, in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, the Supreme Court made clear that although section 1331 jurisdiction is usually invoked by plaintiffs who have pled a

cause of action created by federal law, there is "another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction" which arises where the state law claims "implicate significant federal issues." 545 U.S. 308, 125 S.Ct. 2363, 2366-67, 162 L.Ed.2d 257 (2005). However, the "mere presence" of a federal issue "does not automatically confer federal-question jurisdiction." Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 813, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986). Rather, "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Grable, 545 U.S. at 313, 125 S.Ct. at 2367.

The Supreme Court has cautioned, however, that "even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto" if the exercise of federal jurisdiction would not be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Id. at 313-14, 125 S.Ct. at 2367. Thus, the question to be determined is "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a

federal forum may entertain without disturbing any congressionally approved balance of federal and state responsibilities." Id. at 314, 125 S.Ct. at 2368.

**A.     Whether Plaintiffs' claims "necessarily raise" a federal issue that is "actually disputed and substantial"**

In accordance with Grable, the Court will first consider whether the Plaintiffs' Complaint raises an "actually disputed and substantial" issue of federal law. See id. The Defendants argue that the claims set forth in the Complaint necessarily raise federal issues that are disputed and substantial, as "proof of at least one element of most claims set forth in the Complaint will turn in significant part on whether Defendants' disclosure of broker compensation and the terms of Plaintiffs' mortgage loans were accurate and in conformance with" the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.* [Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Remand, Doc. 8 at 5-6].

The Defendants argue that federal jurisdiction is particularly appropriate in light of the Supreme Court's recent decision in Grable. In that case, the Internal Revenue Service ("IRS") seized real property owned

by the plaintiff to satisfy a federal tax delinquency. Grable, 545 U.S. at 310, 125 S.Ct. at 2366. Following the tax sale, the plaintiff brought a state action against the purchaser of the land to quiet title, claiming that the new purchaser's title was invalid because the IRS failed to give the plaintiff proper notice of the sale as required by federal law. Id. at 311, 125 S.Ct. at 2366. The purchaser removed the case to federal court on the grounds that the action required an interpretation of federal tax law and thus presented a federal question pursuant to section 1331. Id.

The Supreme Court found that the case warranted federal jurisdiction, as the plaintiff had premised its claim of superior title on the failure of the IRS to provide him adequate notice as required by federal law. Thus, the issue of whether the plaintiff had received proper notice within the meaning of the federal statute was "an essential element of its quiet title claim," and the interpretation of the federal statute was actually in dispute. Id. at 315, 125 S.Ct. at 2368. Indeed, the Court noted that the interpretation of the federal notice requirement "appear[ed] to be the only legal or factual issue contested in the case." Id. Noting that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court," and citing the government's

interest in having a federal forum available to vindicate its administrative actions, the Court concluded that a substantial federal issue was presented warranting the exercise of federal jurisdiction. Id.

Unlike Grable, which involved the actions of the IRS and its compliance with a federal statute, the present case was triggered by the conduct of private actors and did not involve the action or decision of any federal agency. Moreover, while Grable presented a sole contested issue of federal law, the Plaintiffs' claims in the present case raise numerous factual and legal issues of state law regarding the representations and actions of the Defendants. See Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006) (distinguishing Grable where plaintiff's claims were "fact-bound and situation-specific"); Acker v. AIG Int'l, Inc., 398 F.Supp.2d 1239 (S.D. Fla. 2005) (finding no substantial federal question where the complaint "raises a host of other issues that do not require the invocation of federal law"). Further, unlike the plaintiff's claims in Grable, the Plaintiffs' claims in the present case do not present a substantial dispute or controversy regarding the validity, construction or effect of any federal law. See, e.g., Acker, 398 F.Supp.2d at 1244 ("A review of Plaintiffs' claims reveals that the

Complaint does not call into question the proper interpretation of federal tax law, but rather concerns whether the Defendants knew or should have known that the tax strategy was invalid under federal law."). While the Defendants may be correct that the disclosure requirements of TILA and RESPA may be implicated by the Plaintiffs' claims, the existence of such federal issues does not confer federal-question jurisdiction in this case. "It is not sufficient to show that a state law claim simply touches upon or implicates a federal issue, but rather determination of the federal issue must be *necessary* to resolve the claim." California v. H&R Block, Inc., No. C 06-2058, 2006 WL 2669045, at *4 (N.D. Cal. Sep. 18, 2006) (emphasis in original).

In considering similar state law claims, other courts have concluded that state law claims such as the ones asserted here do not create an "actually disputed and substantial" issue of federal law, and therefore federal jurisdiction over such claims is not appropriate. See, e.g., King v. Provident Bank, 428 F.Supp.2d 1226, 1231 (M.D. Ala. 2006) (granting remand where plaintiff asserted valid state law claims independent of TILA or RESPA); McKinnes v. Am. Int'l Group, Inc., 420 F.Supp.2d 1254, 1260 (M.D. Ala. 2006) ("The corporate defendants' contention that TILA and

Regulation Z [TILA's implementing regulation] are 'surely' or 'likely' to be disputed in this litigation is insufficient to present a federal question under the standard in Grable."); Cavette v. Mastercard Int'l, Inc., 282 F.Supp.2d 813, 819 (W.D. Tenn. 2003) (granting remand where credit card holder's claim under Tennessee Consumer Protection Act for failure to disclose currency conversion fees did not involve "substantial" or "necessary" interpretation of TILA or related federal regulations); Easterling v. Gulf Guar. Ins. Co., 60 F.Supp.2d 586, 588 (S.D. Miss. 1999) (granting remand where the plaintiff "stated viable state law causes of action and if TILA has been invoked, it is only in an insubstantial way"); see also H&R Block, Inc., 2006 WL 2669045, at *4 (granting remand where TILA violation was not "essential element" but rather "one of eight basic predicate violations," any one of which could support the plaintiff's cause of action under Cal. Bus. & Prof. Code § 17200).

Careful consideration of the Plaintiffs' claims, and particularly the legal and factual issues raised thereby, shows that the present case "does not fit within the special and small category" of state law claims presenting

13

contested federal issues described by <u>Grable</u>. See <u>Empire</u>, 547 U.S. at 700, 126 S.Ct. at 2136.[1]

### B. Whether this Court may entertain this action "without disturbing any congressionally approved balance of federal and state judicial responsibilities"

Even if the Plaintiffs' state law claims presented "substantial" and "actually disputed" federal issues, the exercise of federal jurisdiction in this case would be inappropriate. Even where substantial federal issues are presented by state law claims, the Court must decline to entertain a lawsuit if doing so would disturb the "congressionally approved balance of federal and state judicial responsibilities." <u>Grable</u>, 545 U.S. at 314, 125 S.Ct. at

---

[1] In arguing that the exercise of federal jurisdiction is proper, the Defendants rely heavily upon an unpublished decision from this District, <u>Rose v. SLM Financial Corp.</u>, No. 3:05cv445, 2007 WL 674319 (W.D.N.C. Feb. 28, 2007). In <u>Rose</u>, the plaintiff brought several state law claims against her mortgage lender, including claims for breach of contract, unfair and deceptive trade practices, and breach of the duty of good faith and fair dealing. At first blush <u>Rose</u> may seem very similar to the present case, but upon close scrutiny the issue presented is very different. In denying the plaintiff's motion for remand in <u>Rose</u>, the Court concluded that "the issue of whether TILA and RESPA disclosures *can form the basis of a contract* is a serious federal interest that justifies federal jurisdiction." <u>Id.</u> at *4 (emphasis added). In so holding, the Court analyzed only the plaintiff's breach of contract claim and did not address the plaintiff's claims under the UDTPA or for the breach of duty of good faith and fair dealing. In so doing the Court correctly identified the one federal question that arose in that contract claim, thus justifying federal jurisdiction. The Plaintiffs in the present case, however, assert no such claim. They present no breach of contract claim based upon the federal disclosure requirements. In fact, Plaintiff's herein present no breach of contract claim at all, and do not even mention TILA or RESPA as a basis for any of their claims. As such, the holding of <u>Rose</u> is simply not applicable to this case.

2368. In considering this issue, the Court must determine "(1) the importance of having a federal forum to decide the issue and (2) the effect of exercising jurisdiction on the balance of federal state division of responsibilities." Evans v. Courtesy Chevrolet II, LP, 423 F.Supp.2d 669, 671 (S.D. Tex. 2006).

In Evans, the court explained that "[u]nlike the federal tax code [at issue in Grable], TILA specifically includes provisions preserving a state court's enforcement of the disclosure requirements," and thus concluded that "TILA's language indicates that Congress did not deem it important for federal courts to hear all cases that might raise TILA issues." Id. at 672 (citing 15 U.S.C. § 1610). The Evans court went on to observe:

> Unlike Grable, which featured a "rare" quiet title action that necessarily required interpretation of the federal internal revenue code, cases by an individual against a creditor for allegedly improper practices relating to an installment sales contract for an automobile are anything but rare .... Allowing federal jurisdiction in all cases arising out of disputes over disclosures in installment contracts for purchasing cars similarly portends a significant transfer of judicial responsibilities from state to federal courts.

Id. "Although Evans involved an installment sales contract for an automobile, the court's observations ... are no less pertinent to other

15

similar sales/finance transactions." <u>Ball v. Argent Mortgage Co., LLC</u>, No. 3:06CV587TSL-JCS, 2007 WL 710156, at *4 (S.D. Miss. Mar. 6, 2007) (granting remand where plaintiff asserted state law fraud claims arising from home mortgage loan transaction); <u>see also</u> <u>Leggette v. Washington Mut. Bank</u>, No. 3:03-CV-2909-D, 2005 WL 2679699, at *4 (N.D. Tex. Oct. 19, 2005) (determining that the exercise of federal jurisdiction over home foreclosure disputes would create "a significant transfer of judicial responsibilities from state to federal courts").

In conclusion, the Plaintiffs' state law claims do not present issues of federal law that are "actually disputed and substantial." <u>See</u> <u>Grable</u>, 545 U.S. at 314, 125 S.Ct. at 2368. Further, even if such substantial issues of federal law did exist, the exercise of federal jurisdiction in this case would result in a significant transfer of state law claims to federal courts, thereby disrupting the balance of federal and state judicial responsibilities. For these reasons, federal jurisdiction is lacking in this case. Accordingly, the Plaintiffs' Motion Seeking Remand [Doc. 7] must be granted.[2]

---

[2]Because this case is being remanded, the Court need not reach the merits of the Defendants' Motions to Dismiss [Docs. 2 and 4].

### C. Whether the Plaintiffs are entitled to an award of costs and attorneys fees pursuant to 28 U.S.C. § 1447(c)

When a case is remanded, section 1447 provides that the Court may make an award of costs and expenses, including attorney's fees, incurred by the plaintiff as a result of the removal. 28 U.S.C. § 1447(c). An award of costs and fees under section 1447(c) should be made "only when such an award is just." Martin v. Franklin Capital Corp., 546 U.S. 132, 138, 126 S.Ct. 704, 710, 163 L.Ed.2d 547 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Id. at 141, 126 S.Ct. at 711.

While the Court has determined that the exercise of federal jurisdiction is not warranted in this case, the Court cannot conclude that the Defendants "lacked an objectively reasonable basis for seeking removal" of this matter. See id. Further, the Plaintiffs do not contend that this matter presents such "unusual circumstances" as to justify the award of fees and costs despite the reasonableness of the grounds for removal. Accordingly, the Plaintiffs' request for an award of fees and costs pursuant to section 1447(c) is denied.

**IT IS, THEREFORE, ORDERED** that the Motion of Plaintiffs Seeking Remand [Doc. 7] is **GRANTED**, and this matter is hereby **REMANDED** to the General Court of Justice of North Carolina, Superior Court Division, Mecklenburg County, from where it was removed. The Plaintiffs' request for an award of attorney's fees and costs pursuant to 28 U.S.C. § 1447(c) [Doc. 7] is **DENIED.**

Because this matter is remanded, **IT IS FURTHER ORDERED** that the Motion of Beazer Homes Corp. and Beazer Mortgage Corporation to Dismiss Complaint [Doc. 2] and the Motion of Roderick D. Williams to Dismiss Complaint [Doc. 4] are **DENIED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

Signed: April 23, 2008

Martin Reidinger
United States District Judge